# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DARRYL CROCKETT** | **CIVIL ACTION** |
| **VERSUS** | **NO. 15-319** |
| **N. BURL CAIN, WARDEN** | **SECTION: "S"(3)** |

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **GRANTED IN PART AND DENIED IN PART**.

Petitioner, Darryl Crockett, is a state prisoner incarcerated at the Louisiana State Penitentiary in Angola, Louisiana.  On January 20, 1983, he was convicted of first degree murder under Louisiana law.[1]  On January 31, 1983, he was sentenced to a term of life imprisonment without benefit of probation, parole, or suspension of sentence.[2]  On March 14, 1984, the Louisiana

---

[1] State Rec., Vol. 2 of 7, minute entry dated January 20, 1983; State Rec., Vol. 2 of 7, jury verdict form.
[2] State Rec., Vol. 2 of 7, minute entry dated January 31, 1983.

Fourth Circuit Court of Appeal affirmed his conviction and sentence.[3]  He did not seek further direct review.

On October 26, 1987, petitioner filed a motion for a new trial with the state district court.[4] That motion was denied on November 4, 1987.[5]

On September 10, 1991, petitioner filed an application for post-conviction relief with the state district court.[6]  Although the state court record submitted to this court does not include a copy of the court's ruling on that application, it was presumably denied.

Petitioner then purportedly filed another application for post-conviction relief with the state district court in December of 1992.  When he failed to receive a ruling, he filed a writ application with the Louisiana Fourth Circuit Court of Appeal.[7]  On March 22, 1993, the Court of Appeal denied relief, holding that petitioner's post-conviction application was untimely.[8]

Petitioner thereafter filed additional post-conviction applications with the state district court on September 21, 1999,[9] and October 20, 2003,[10] and the court denied relief on January 29,

---

[3] State v. Crockett, No. KA-1280 (La. App. 4th Cir. Mar. 14, 1984); State Rec., Vol. 6 of 7.
[4] State Rec., Vol. 2 of 7.  Federal habeas courts must apply Louisiana's "mailbox rule" when determining the filing date of a Louisiana state court filing, and therefore such a document is considered "filed" as of the moment the prisoner "placed it in the prison mail system."  Causey v. Cain, 450 F.3d 601, 607 (5th Cir. 2006).  Because that date cannot be gleaned from the state court record with respect to the *pro se* filings in this case, this Court will simply use the signature date of the applications as the filing date, in that the various applications were obviously placed in the mail no earlier than the date they were signed.  In those instances where no signature date appears on a document and no other evidence is available, the Court will look to the filing date placed on the document by the clerk of court.
[5] State Rec., Vol. 2 of 7, Judgment dated November 4, 1987.
[6] State Rec., Vol. 2 of 7.
[7] State Rec., Vol. 7 of 7.
[8] State v. Crockett, No. 93-K-0426 (La. App. 4th Cir. Mar. 22, 1993); State Rec., Vol. 7 of 7.
[9] State Rec., Vol. 2 of 7.
[10] State Rec., Vol. 2 of 7.

2

2004.[11]  His related writ applications were then likewise denied by the Louisiana Fourth Circuit Court of Appeal on March 31, 2004,[12] and by the Louisiana Supreme Court on April 1, 2005.[13]

On or about April 14, 2005, petitioner filed a federal habeas corpus application.  That application was dismissed without prejudice on February 16, 2007.[14]

On June 25, 2012, the United States Supreme Court issued its opinion in Miller v. v. Alabama, 132 S. Ct. 2455 (2012).  In Miller, the Supreme Court held that criminal sentences of "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'"  Id. at 2460.

On November 15, 2012, petitioner filed a motion to correct illegal sentence with the state district court, claiming that his sentence was unconstitutional under Miller.[15]  However, he subsequently asked to withdraw that motion,[16] and the court granted that motion to withdraw on December 19, 2012.[17]  He then filed a new motion to correct illegal sentence on the same grounds on June 19, 2013.[18]  On December 16, 2013, the district court denied that motion, holding that Miller was not retroactive to cases on collateral review.[19]  Petitioner's related writ applications were then likewise denied by the Louisiana Fourth Circuit Court of Appeal on February 5, 2014,[20] and by the Louisiana Supreme Court on January 16, 2015.[21]

---

[11] State Rec., Vol. 2 of 7, Judgment dated January 29, 2004.
[12] State v. Crockett, No. 2004-K-0355 (La. App. 4th Cir. Mar. 31, 2004); State Rec., Vol. 7 of 7.
[13] State ex rel. Crockett v. State, 897 So.2d 595 (La. 2005); State Rec., Vol. 7 of 7.
[14] Crockett v. Cain, Civ. Action No. 05-1523, 2007 WL 582495 (E.D. La. Feb. 16, 2007).
[15] State Rec., Vol. 2 of 7.
[16] State Rec., Vol. 2 of 7.
[17] State Rec., Vol. 2 of 7, Judgment dated December 19, 2012.
[18] State Rec., Vol. 2 of 7.
[19] State Rec., Vol. 1 of 7, Judgment dated December 16, 2013.
[20] State v. Crockett, No. 2014-K-0071 (La. App. 4th Cir. Feb. 5, 2014); State Rec., Vol. 7 of 7.
[21] State ex rel. Crockett v. State, 168 So.3d 387 (La. 2015); State Rec., Vol. 7 of 7.

On January 28, 2015, petitioner filed the instant federal application.[22]  In this application, he claims:

1.      Petitioner's sentence is unconstitutional under Miller; and

2.      There was racial discrimination in the selection of the grand jury.[23]

The state filed a response in opposition,[24] and petitioner filed a reply to the state's response.[25]

## I.  Statute of Limitations

The state argues that petitioner's federal application is untimely. The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") included a statute of limitations for petitioners seeking federal habeas corpus relief pursuant to 28 U.S.C. § 2254.  Specifically, the AEDPA provided:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly

---

[22] Rec. Doc. 1.  "A prisoner's habeas application is considered 'filed' when delivered to the prison authorities for mailing to the district court." Roberts v. Cockrell, 319 F.3d 690, 691 n.2 (5th Cir. 2003).  Here, petitioner has declared under penalty of perjury that his federal application was placed in the prison mailing system on January 28, 2015. Rec. Doc. 1, p. 15.

[23] This second claim is not discussed in petitioner's accompanying memorandum; however, it is listed on his form petition.  Rec. Doc. 1, p. 7.

[24] Rec. Doc. 18; see also Rec. Docs. 24 and 27.

[25] Rec. Doc. 19.

recognized by the Supreme Court and made retroactively applicable
to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims
presented could have been discovered through the exercise of due
diligence.

28 U.S.C. § 2244(d)(1).

Clearly, Subsections B and D do not apply in the instant case because petitioner identifies

neither a state-created impediment to filing nor a newly discovered factual predicate on which his

claims are based.  However, as explained below, Subsection C applies to petitioner's first claim,

while Subsection A applies to his second claim.

As noted, petitioner's first claim is that his sentence is unconstitutional under Miller v.

Alabama, 132 S. Ct. 2455 (2012).  The United States Supreme Court has expressly held that Miller

announced a new substantive rule of constitutional law which is retroactive to cases on state

collateral review.  Montgomery v. Louisiana, 136 S. Ct. 718 (2016).  Therefore, as the state

concedes, Subsection C applies to that claim.[26]

However, because petitioner's second claim, i.e. there was racial discrimination in the

selection of the grand jury, is in no way based on Miller or any other newly-recognized

constitutional retroactively applicable to cases on collateral review, it appears that the timeliness

of that claim must be separately determined under Subsection A.  As the United States Fifth Circuit

Court of Appeals has observed:

The Fifth Circuit has not decided whether 28 U.S.C. § 2244(d)(1) applies piecemeal
to each claim or to the whole habeas application.  Though we do not decide that
issue today, it appears that applying the statute of limitations to each claim is

---

[26] In its initial response, the state argued that Miller did not apply retroactively to cases on collateral review and,
therefore, Subsection C was inapplicable.  Rec. Doc. 18, pp. 7-8.  However, the state subsequently filed a supplemental
response acknowledging that its argument was no longer viable in light of Montgomery.  Rec. Doc. 24, p. 2.

consistent with AEDPA and the precedent of other circuits.  See, e.g., Zack v. Tucker, 704 F.3d 917, 921-24 (11th Cir. 2013) (en banc) (containing an in-depth discussion of the issue and collecting cases); see also Capozzi v. United States, 768 F.3d 32, 33 (1st Cir. 2014); Bachman v. Bagley, 487 F.3d 979, 984 (6th Cir. 2007); DeCoteau v. Schweitzer, 774 F.3d 1190, 1192 (8th Cir. 2014); Mardesich v. Cate, 668 F.3d 1164, 1171 (9th Cir. 2012); Prendergast v. Clements, 699 F.3d 1182, 1187 (10th Cir. 2012).

In re Young, 789 F.3d 518, 528 n.3 (5th Cir. 2015).

### A.  Timeliness of Petitioner's Miller Claim

Under Subsection C, the federal limitations period applicable to petitioner's first claim commenced on the date Miller was issued, i.e. June 25, 2012.[27]  It then expired one year later, unless that deadline was extended through tolling.

The federal limitations period is subject to both statutory and equitable tolling.  Regarding statutory tolling, the AEDPA expressly provides:  "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."  28 U.S.C. § 2244(d)(2).  In addition, the United States Supreme Court has expressly held that the AEDPA's statute of limitations is also subject to equitable tolling.  Holland v. Florida, 560 U.S. 631, 645 (2010).  To be entitled to equitable tolling, a petitioner must show:  "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."  Id. at 649 (internal quotation marks omitted); accord Davis v.

---

[27] Under Subsection C, the one-year limitations period commences on the date the right at issue was initially recognized, not the date on which the Supreme Court declared that the new rule was retroactive to cases on collateral review.  Hauser v. Cain, Docket No. 14-cv-2654, 2016 WL 4703974, at *4 (W.D. La. July 18, 2016), adopted, 2016 WL 4703509 (W.D. La. Sept. 6, 2016); Funchess v. Prince, Civ. Action No. 14-2105, 2016 WL 756530, at *3 (E.D. La. Feb. 25, 2016); see Roussell v. Day, No. 01-30940, 2002 WL 432662 (5th Cir. 2002); cf. United States v. Lopez, 248 F.3d 427 (5th Cir. 2001).

Johnson, 158 F.3d 806, 811 (5th Cir. 1998) (holding that the AEDPA's statute of limitations can be equitably tolled "in rare and exceptional circumstances").

In the instant case, after one hundred forty-two (142) days elapsed, petitioner statutorily tolled his federal limitations period by filing his motion to correct illegal sentence with the state district court on November 15, 2012. Tolling then continued until December 19, 2012, the date on which the state district court granted his motion to voluntarily withdraw that motion. See White v. Director, TDCJ-CID, Civ. Action No. 6:15cv847, 2016 WL 354030, at *2 (E.D. Tex. Jan. 14, 2016), adopted, 2016 WL 325282 (E.D. Tex. Jan. 26, 2016); Mata v. Stephens, No. 3:15-CV-0199, 2015 WL 4557223, at *3-4 (N.D. Tex. July 28, 2015).

After the limitations period resumed running at that point, another one hundred eighty-one (181) days elapsed before petitioner again statutorily tolled the limitations period by filing his second motion to correct illegal sentence on June 19, 2013. Tolling then continued uninterrupted for the duration of the post-conviction proceedings, so long as he sought supervisory review in a timely manner. Grillette v. Warden, Winn Correctional Center, 372 F.3d 765, 769-71 (5th Cir. 2004).

The crucial question in the instant case is whether petitioner sought review of his Miller claim by the Louisiana Supreme Court in a timely manner. After the Louisiana Fourth Circuit Court of Appeal denied the claim on February 5, 2014, petitioner had only thirty (30) days (i.e. until March 7, 2014) to seek review by the Louisiana Supreme Court.[28] Petitioner did in fact seek

---

[28] Under state law, a litigant has only thirty days to seek review of a decision of a Louisiana Court of Appeal. Louisiana Supreme Court Rule X, § 5(a).

review by the Louisiana Supreme Court in Case No. 2014 KH 611; however, the parties disagree as to whether that writ application was timely filed.

To answer that question, this Court must apply Louisiana's "mailbox rule," meaning that the application was considered "filed" as of the moment the prisoner "placed it in the prison mail system." Causey v. Cain, 450 F.3d 601, 607 (5th Cir. 2006). Unfortunately, that date is rarely easy to ascertain, in that it normally is not tracked with any precision by state authorities. Because of that unfortunate reality, and because a prisoner should not be held at fault for record-keeping deficiencies attributable to his jailers, federal courts often give prisoners the benefit of the doubt and simply assume that such filings were given to prison authorities for mailing on the date the documents were signed. See, e.g., Burnett v. Tanner, Civ. Action No. 15-1208, 2016 WL 626450, at *3 (E.D. La. Jan. 13, 2016), adopted, 2016 WL 430454 (E.D. La. Feb. 4, 2016). In this case, however, petitioner did not date his writ application when he signed it.

The only information which the undersigned could glean from the state court record on this question was that (1) the application was mailed in an envelope stamped "NOT CENSORED" by prison authorities on March 19, 2014, (2) that envelope was stamped as received by the Louisiana Supreme Court on March 21, 2014, and (3) the Louisiana Supreme Court Clerk's date-stamp reflects a filing date of March 24, 2014.[29] All three of those dates obviously fall after the deadline, and, therefore, the state argues that the application was untimely.

On the other hand, in his reply to the state's response in this proceeding, petitioner stated that his Louisiana Supreme Court writ application was filed on **February 21, 2014**, a date well

---

[29] State Rec., Vol. 7 of 7.

before the deadline.[30]  In an attempt to verify petitioner's contention, this Court ordered the Warden of the Louisiana State Penitentiary to produce the prison's records of its pertinent mail logs or inmate requests for indigent mail.[31]  Those records showed that plaintiff did in fact have outgoing mail addressed to the Louisiana Supreme Court which could have been placed in the prison mailing system on Friday, February 21, 2014.  The Warden's representative explained:

> The LSP Mail/Package Department does not maintain records of outgoing mail unless an inmate submits the costs and requests certification through the U.S. Post Office.  However, if an inmate mails an article of mail through LSP's Indigent Mail Program, the Mail/Package Department submits a transmittal to the Inmate Accounts Department placing a debit on the inmate's account for the cost of postage.  If an offender does not use the indigent mail program, nor does he certify a piece of outgoing mail and simply places standard postage on the article of mail, then the Mail/Package Department would not have any record of that mail.
>
> Offender Crockett does not have any record of indigent mail during this time period.  The Mail/Package does have records of certifying several items for Offender Crockett.  *Specifically, regarding mail to the Louisiana Supreme Court, the Mail Room certified a letter for Offender Crockett on 02/24/2014.  That day was a Monday.  Offender Crockett could have placed his mail in the mailbox any time after we picked up mail on Friday morning up until we picked mail on Monday morning.*  Copies of the logbook entries are enclosed and highlighted.[32]

The referenced logbook entry did in fact reflect such a mailing.[33]

Moreover, the undersigned's staff actually went to the Louisiana Supreme Court and personally reviewed that court's records to determine whether the court received any *other* document from petitioner in February or March of 2014.  That investigation revealed nothing – apparently, the only mailing received by that court from petitioner during that time was the writ application included in the state court record submitted to this court.

---

[30] Rec. Doc. 19, p. 2
[31] Rec. Doc. 20.
[32] Rec. Doc. 21, p. 2 (emphasis added).
[33] Rec. Doc. 21, p. 5.

The state offers a possible explanation for the foregoing discrepancies.  In its supplemental response,[34] the state notes that the prison mail log indicates that the February 24 mailing was addressed to the Louisiana Supreme Court's *former address* on Loyola Avenue, a location it had not occupied for almost a decade.  However, the copy of the writ application which appears in the state court record was mailed in an envelope properly addressed to the court's *current address* on Royal Street.[35]  The state therefore surmises that petitioner's original attempt to file his application within the thirty-day period was mailed to the wrong address and that, after he somehow learned of his error, he mailed a new application to the correct address in March after the filing deadline had already expired.  The state further argues that this error dooms petitioner's claim, reasoning that his original application did not toll the limitations period because it was mailed to the wrong address, while his subsequent remailing of his application to the correct address did not toll the limitations period because it was already untimely when it was given to prison officials for mailing.

The state's argument, while seemingly harsh, is not without support in the jurisprudence.  For example, some courts have in fact held that prisoners who mail an application to the wrong address, even if they were misled by incorrect information provided by the court or prison officials, are not entitled to tolling based on the application.  United States v. Wences-Adame, Crim. Action No. 07-71, 2011 WL 2436119 (M.D. La. June 15, 2011); United States v. Davis, Crim. Action No. 97-237, 2007 WL 1108924, at *3 (D. Ariz. Apr. 13, 2007).  Further, it is clear that a federal habeas petitioner receives no tolling credit whatsoever for an untimely Louisiana Supreme Court writ application.  Williams v. Cain, 217 F.3d 303 (5th Cir. 2000); Cook v. Yelverton, Civ. Action No.

---

[34] Rec. Doc. 24.
[35] State Rec., Vol. 7 of 7.

16-954, 2016 WL 3189699, at *4 (E.D. La. May 9, 2016), adopted, 2016 WL 3167689 (E.D. La.

June 7, 2016).

Nonetheless, the undersigned declines to recommend that petitioner be denied federal

habeas corpus review of his Miller claim based on a single, quickly corrected error on his part

regarding the addressing of an envelope.  The United States Fifth Circuit Court of Appeals has

held:

> We must be cautious not to apply the statute of limitations too harshly.  "Dismissal of a first habeas petition is a particularly serious matter, for that dismissal denies the petitioner the protections of the Great Writ entirely, risking injury to an important interest in human liberty."  Lonchar [v. Thomas], 517 U.S. [314,] 324, 116 S.Ct. 1293 [(1996)].

Fisher v. Johnson, 174 F.3d 710, 713 (5th Cir. 1999).

Mindful of that admonition, the undersigned notes the following factors in this case:  (1)

petitioner has been diligent in seeking relief of his Miller claim; (2) the only error made by

petitioner, an incarcerated person acting *pro se*, was to misaddress one envelope to the Louisiana

Supreme Court;[36] (3) that error must have been apparent to Louisiana State Penitentiary mailroom

officials, who presumably transmit prisoner mail to the Louisiana Supreme Court on a fairly

frequent basis, and yet they simply processed his mail – and documented the address to which the

item was being sent – without bringing the error to petitioner's attention;[37] (4) this is petitioner's

first opportunity to seek federal habeas corpus relief of his Miller claim; (5) if the claim is

dismissed as time-barred in this proceeding, he will be forever barred from seeking federal review

---

[36] The undersigned notes that this is not a case in which a petitioner filed his application in the wrong *court*.  Petitioner sent his application to the correct court, but he mistakenly used an outdated address.

[37] This, of course, is not meant to suggest that prison officials had a *constitutional obligation* to advise petitioner of his error; they did not.  Rather, it is meant merely as an observation of one of the many troubling aspects of this case and the seeming inequity of barring the claim from review.

11

of the claim; (6) for the reasons explained later in this opinion, his <u>Miller</u> claim is clearly meritorious and the state courts obviously erred in denying it; and (7) granting petitioner relief on his <u>Miller</u> claim in no way affects the validity of his conviction, it merely affords him an *opportunity* to prove to the state courts that he should be eligible for parole because he was a juvenile whose crime resulted from "transient immaturity" rather than "irreparable corruption."[38]

For all of these reasons, the undersigned recommends that the limitations period for petitioner's <u>Miller</u> claim be tolled from June 19, 2013, the date on which the motion to correct illegal sentence was filed, until January 16, 2015, the date on which the Louisiana Supreme Court denied relief based on statutory tolling – or, if such tolling is found to be inappropriate for any portion of that period, based on equitable tolling.

If that recommendation is accepted, when the limitations period resumed running at that point, petitioner had forty-two (42) days remaining in which to assert his <u>Miller</u> claim in federal court. Because he filed the instant application on January 28, 2015, a mere twelve (12) days later, the undersigned recommends that petitioner's <u>Miller</u> claim be considered timely.

---

[38] <u>Montgomery</u>, 136 S. Ct. at 735-736. The United States Supreme Court explained:

> Extending parole eligibility to juvenile offenders does not impose an onerous burden on the States, nor does it disturb the finality of state convictions. Those prisoners who have shown an inability to reform will continue to serve life sentences. The opportunity for release will be afforded to those who demonstrate the truth of <u>Miller</u>'s central intuition – that children who commit even heinous crimes are capable of change.

<u>Id.</u> at 736. Moreover, even <u>Miller</u> does not forbid a state court from finding that a child is deserving of a life sentence without the possibility of parole; rather, it merely requires a personalized sentencing judgment before such a sentence is imposed:

> Although we do not foreclose a sentencer's ability to make that judgment in homicide cases, we require it to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison.

<u>Miller</u>, 132 S. Ct. at 2469. Therefore, *even if* this Court grants petitioner's <u>Miller</u> claim, he could again find himself resentenced by the state court to the same term of life imprisonment without the possibility of parole.

## A.  Timeliness of Petitioner's Grand Jury Discrimination Claim

Despite the foregoing recommendation, the undersigned further recommends that petitioner's claim of racial discrimination in the selection of the grand jury be found untimely.  As previously explained, the timeliness of that claim must be separately determined under Subsection A.  Under that subsection, a petitioner must bring his § 2254 claim within one (1) year of the date on which his underlying criminal judgment becomes "final."  28 U.S.C. § 2244(d)(1)(A). However, with respect to a prisoner such as Crockett, whose conviction and sentence became final prior to the enactment of the AEDPA, a grace period applies, and the one-year statute of limitations begins to run in such cases on the AEDPA's effective date, April 24, 1996.  Flanagan v. Johnson, 154 F.3d 196, 200-02 (5th Cir. 1998).  Therefore, under Subsection A, petitioner's period for asserting his grand jury discrimination claim expired one year later on April 24, 1997, unless that deadline was extended through tolling.

Clearly, petitioner is not entitled to statutory tolling with respect to this claim, in that he had no "properly filed application for State post-conviction or other collateral review" pending before any state court during the applicable one year period.  See 28 U.S.C. § 2244(d)(2).[39]

As to equitable tolling with respect to this claim, petitioner bears the burden of proof to establish entitlement to such tolling.  Alexander v. Cockrell, 294 F.3d 626, 629 (5th Cir. 2002).  In the instant case, petitioner has brought forth no evidence demonstrating that he is entitled to

---

[39] The Court notes that petitioner subsequently filed state post-conviction applications; however, it is beyond cavil that applications filed after the expiration of the federal statute of limitations have no bearing on the timeliness of a federal application.  See Scott v. Johnson, 227 F.3d 260, 263 (5th Cir. 2000); Magee v. Cain, Civ. Action No. 99-3867, 2000 WL 1023423, at *4 (E.D. La. July 24, 2000), aff'd, 253 F.3d 702 (5th Cir. 2001); Williams v. Cain, Civ. Action No. 00-536, 2000 WL 863132, at *2 (E.D. La. June 27, 2000).  Simply put, once the federal limitations period expires, "[t]here [i]s nothing to toll."  Butler, 533 F.3d at 318.

equitable tolling, and this Court knows of no reason that would support equitable tolling of the statute of limitations with respect to this claim.

Lastly, the Court also notes that the United States Supreme Court has held:  "[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar ... or, as in this case, expiration of the statute of limitations." McQuiggin v. Perkins, 133 S. Ct. 1924, 1928 (2013).  That said, the Supreme Court took care to note:  "We caution, however, that tenable actual-innocence gateway pleas are rare:  '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'"  Id. at 1928 (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)).  Here, petitioner does not invoke McQuiggin and, in any event, he has not made colorable showing that he is actually innocent in light of "new evidence."

Because petitioner is not entitled to statutory tolling, and because he has not established that he is eligible for equitable tolling or that the McQuiggin "actual innocence" exception applies, his grand jury discrimination claim had to be filed no later than April 24, 1997, in order to be timely.  Because his federal application was not filed until January 28, 2015, his second claim is untimely and should therefore be denied on that basis.

## II.  Merits

In light of the recommendation that petitioner's Miller claim be considered timely, and because the claim is exhausted,[40] the undersigned will now address the merits of that claim.  A

---

[40] The state argues that petitioner's Miller claim is unexhausted, opining that petitioner must give the state courts yet another chance to address the claim in light of the holding in Montgomery.  However, that argument has no merit. Williams v. Cain, Civ. Action No. 15-404, 2016 WL 3877973, at *4 (E.D. La. July 18, 2016) ("The state courts were given an opportunity to consider and apply the Supreme Court's decision in Miller. The Supreme Court's decision in

review of the record and the law shows that petitioner's <u>Miller</u> claim is meritorious and relief should be granted for the following reasons:

1.   Petitioner was seventeen years old when the crime at issue was committed, and the state courts imposed as the sentence for that crime a *mandatory* term of life imprisonment without benefit of parole.

2.   Petitioner's sentence is therefore unconstitutional under <u>Miller</u>.

3.   The state courts denied petitioner relief under <u>Miller</u> based on a conclusion that <u>Miller</u> has no retroactive effect to cases on collateral review.

4.   That conclusion is directly contrary to the United States Supreme Court's holding in <u>Montgomery</u>.

5.   Therefore, petitioner is entitled to federal habeas corpus relief.

Accordingly, the Court must next determine what form of relief is appropriate. As noted, <u>Miller</u> does not forbid a juvenile offender from being sentenced to a term of life imprisonment without parole; rather, it forbids only the imposition of that punishment without an individualized sentencing determination. Accordingly, the undersigned finds that petitioner is entitled to be resentenced in conformity with <u>Miller</u> and that the state courts, in the first instance, are entitled to determine the appropriate sentence. <u>Gillam v. Cain</u>, Civ. Action No. 14-2129, 2016 WL 3060254, at *6 (E.D. La. May 31, 2016); <u>Reynolds v. Leblanc</u>, Civ. Action No. 16-342, 2016 WL 4733292, at *6 (E.D. La. May 4, 2016), <u>adopted</u>, 2016 WL 4720007 (E.D. La. Sept. 9, 2016); <u>Palmer v.</u>

_____

<u>Montgomery</u> merely removed any doubt that <u>Miller</u> must be applied retroactively to cases on collateral review. Accordingly, the Court finds that Petitioner exhausted his state court remedies as <u>Montgomery</u> was not an intervening change in federal law, but merely a clarification that <u>Miller</u> should apply retroactively."); <u>Gillam v. Cain</u>, Civ. Action No. 14-2129, 2016 WL 3060254, at *5 (E.D. La. May 31, 2016); <u>Reynolds v. Leblanc</u>, Civ. Action No. 16-342, 2016 WL 4733292, at *2-4 (E.D. La. May 4, 2016), <u>adopted</u>, 2016 WL 4720007 (E.D. La. Sept. 9, 2016).

Cain, Civ. Action No. 03-2983, 2016 WL 2637654, at *3 (E.D. La. Apr. 5, 2016), adopted, 2016 WL 2594753 (E.D. La. May 5, 2016); Trevathan v. Cain, Civ. Action No. 15-1009, 2016 WL 1440794, at *2 (E.D. La. Mar. 1, 2016), adopted, 2016 WL 1446150 (E.D. La. Apr. 11, 2016).

## RECOMMENDATION

It is therefore **RECOMMENDED** that petitioner's claim that there was racial discrimination in the selection of the grand jury be **DENIED AND DISMISSED WITH PREJUDICE** as untimely.

It is **FURTHER RECOMMENDED** that petitioner's claim that his sentence is unconstitutional under Miller be **GRANTED**, that his mandatory sentence of life imprisonment without the benefit of probation, parole, or suspension of sentence be **VACATED**, and that the state court be **ORDERED** to resentence him in conformity with Miller v. Alabama, 132 S. Ct. 2455 (2012), within one hundred twenty (120) days or, in the alternative, to release him from confinement.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[41]

---

[41] Douglass referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.

New Orleans, Louisiana, this thirtieth day of November, 2016.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**